IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLYDE PRICE,                          :    CIVIL ACTION
                                      :    NO. 15-1909
        Plaintiff,                    :
                                      :
        v.                            :
                                      :
CITY OF PHILADELPHIA, et al.,         :
                                      :
            Defendants.               :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          March 7, 2017

**Table of Contents**

I.    INTRODUCTION.......................................... 2

II.   FACTUAL BACKGROUND.................................... 3

III.  PROCEDURAL HISTORY.................................... 6

IV.   LEGAL STANDARD........................................ 9

V.    DISCUSSION .......................................... 11

      A.    Plaintiff's 42 U.S.C. § 1983 Claims............. 14

            1.    Count One: Retaliation.................... 15

            2.    Count Two: Excessive Force................ 21

                  a.    Officer Simmons..................... 24

                  b.    Officer Little...................... 29

            3.    Count Three: Unreasonable Search and Seizure. 31

                  a.    Seizure............................. 34

                  b.    Search.............................. 40

        4.    Count Four: Equal Protection................ 42

    B.    Plaintiff's State Law Claims..................... 47

        1.    Counts Five and Six: False Arrest and False
              Imprisonment................................ 48

        2.    Count Seven: Abuse of Process............... 53

        3.    Count Eight: Malicious Prosecution.......... 56

    C.    Punitive Damages................................. 57

VI.  CONCLUSION........................................... 59

## I.    INTRODUCTION

        In this action, Plaintiff Clyde Price ("Plaintiff"),
proceeding pro se, alleges that Philadelphia Police Officers
Tyrone Simmons ("Officer Simmons") and James Little ("Officer
Little") wrongfully stopped, searched, and arrested him, using
excessive force, in retaliation for Plaintiff's previous filing
of a lawsuit against the Philadelphia Police Department.
Plaintiff brings claims under 42 U.S.C. § 1983 and Pennsylvania
state law against the City of Philadelphia ("the City"), Officer
Simmons, Officer Little, and former Philadelphia Police
Commissioner Charles Ramsey ("Former Commissioner Ramsey")
("collectively, "Defendants").  After the Court granted
Defendants' motion to dismiss as to the City, but denied the
motion as to Officer Simmons, Officer Little, and Former
Commissioner Ramsey, Defendants deposed Plaintiff.  The
remaining Defendants now move for summary judgment pursuant to

2

Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff has also filed a motion to strike Defendants' motion for summary judgment.

For the reasons discussed below, the Court will grant in part and deny in part Defendants' motion for summary judgment.  The Court will grant Defendants' motion for summary judgment with respect to all of Plaintiff's claims against Officer Little and Officer Simmons, with the exception of Plaintiff's claims against Officer Simmons under 42 U.S.C. § 1983 for (1) excessive force and (2) unreasonable search and seizure in violation of the Fourth Amendment.  The Court will also deny Plaintiff's motion to strike Defendants' motion for summary judgment.

## II.  FACTUAL BACKGROUND[1]

The facts of this case are relatively straightforward.  On April 13, 2013, Plaintiff became involved in an argument with a female acquaintance near the corner of Lindenwood and Jefferson Streets in Philadelphia, Pennsylvania.  Price Dep. 13:14-16, 16:1-2, 17:7-24, Nov. 6, 2015, Defs.' Mot. Summ. J. Ex. A, ECF No. 19-1; Simmons Decl. ¶¶ 3-5, Defs.' Mot. Summ. J. Ex. B, ECF No. 19-2.  Officers Simmons and Little, on patrol in

---

[1]      The facts are presented in the light most favorable to Plaintiff, the nonmoving party.  See Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC, 784 F.3d 177, 179 n.1 (3d Cir. 2015).

the area, observed the dispute.  Price Dep. 23:2-10, Simmons
Decl. ¶¶ 5-7.

After observing the argument, Officer Simmons and
Officer Little approached Plaintiff and his acquaintance.  Price
Dep. 24:2-10; Simmons Decl. ¶¶ 5-7.  At some point during their
approach, Plaintiff started moving away from the officers.[2]  At
that time, Officer Simmons grabbed Plaintiff and placed him in
handcuffs.  Price Dep. 24:7-8, 25:5-6; Simmons Decl. ¶ 9.

Plaintiff testified that after Officer Simmons
approached Plaintiff and before he placed Plaintiff in
handcuffs, he "threw" Plaintiff against the police vehicle with

_____

[2]      Officer Simmons states that Plaintiff "attempted to
push past [the officers] and run from the scene."  Simmons Decl.
¶ 7.  In contrast, Plaintiff testified that he did not run away;
he merely walked.  Price Dep. 27:2-15.  He explained that he
walked away because he has had bad experiences with the police
in the past.  Id. at 27:23-28:7.

"force, but not with that much force."  Price Dep. 24:7-8, 25:5-6, 28:24-29:7.  Officer Simmons does not make any statement regarding his physical interaction with Plaintiff, and Officer Little states that he walked away to speak with Plaintiff's acquaintance after Officer Simmons placed Plaintiff in handcuffs.  See Little Decl. ¶¶ 10-11.  The parties do not dispute that after Officer Simmons placed Plaintiff in handcuffs, he searched Plaintiff and located a pocketknife and several bags containing a substance that was later discovered to be crack cocaine.[3]  Price Dep. 25:5-12, 42:11-43:19; Simmons Decl. ¶¶ 12-20.  Officer Simmons then placed Plaintiff under arrest.  Simmons Decl. ¶ 18.

Plaintiff alleges that he was in custody from April 13, 2013, until August 8, 2013, at which time his motion to suppress the evidence gathered during Officer Simmons' search was granted and he was released from prison.  Am. Compl. ¶ 13, ECF No. 11.  At his deposition, Plaintiff testified that the

---

[3]    Plaintiff testified that he was wearing the knife on his belt.  Price Dep. 26:12-18.  Officer Simmons states that he "observed what appeared to be a knife protruding out of his left inside jacket pocket."  Simmons Decl. ¶ 12.  Officer Simmons contends that he decided to conduct a "safety frisk" of Plaintiff on the basis of (1) the "altercation" between Plaintiff and his acquaintance, (2) Plaintiff's "pressing himself up against the side of the vehicle" in response to Officer Simmons' inquiry as to whether Plaintiff had anything illegal on him, (3) Plaintiff's "attempt to run from the scene," and (4) Officer Simmons' observation of a knife.  Id. at ¶¶ 13-14.

evidence was suppressed following a hearing before a magistrate
judge, and that all charges against him were ultimately
withdrawn.  Price Dep. 38:20-39:12.  Plaintiff believes that the
evidence was suppressed on the basis of Officer Simmons' lack of
probable cause for the search and failure to inform Plaintiff of
his <u>Miranda</u> rights prior to questioning him.[4]  <u>Id.</u> at 41:2-6.

## III. PROCEDURAL HISTORY

         Plaintiff filed this action on April 10, 2015,
initially bringing claims against the City, the Philadelphia
Police Department (the "PPD"), and a John Doe police officer.
ECF No. 1.  Plaintiff's complaint was deemed filed on April 17,
2015, after the Court granted him <u>in forma pauperis</u> status.  ECF
Nos. 2, 3.  The Court immediately dismissed Plaintiff's claims
against the PPD as legally baseless, pursuant to 28 U.S.C.
§ 1915(e)(2)(B)(i), after finding that the PPD is not a separate
legal entity from the City subject to suit under 42 U.S.C.
§ 1983.  ECF No. 2.

          On June 30, 2015, the City answered Plaintiff's
complaint, asserting affirmative defenses of (1) failure to
state a claim upon which relief can be granted and (2) sovereign

---

[4]         Officer Simmons and Little state that they filled out
paperwork in connection with the arrest, but were otherwise not
involved in the decision of whether to charge Plaintiff with any
crimes, and had no conversations or communication with any
district attorney regarding Plaintiff's charges.  Simmons Decl.
¶¶ 21-24; Little Decl. ¶¶ 18-21.

immunity under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Const. Stat. §§ 8541-42.  ECF No. 6.  The City then filed a motion for judgment on the pleadings, ECF No. 9, which Plaintiff did not oppose.[5]

On August 28, 2015, following a hearing, the Court dismissed Plaintiff's Complaint with prejudice as to the City, and without prejudice as to the individual John Doe police officer.  ECF No. 10.  The Court also (1) granted Plaintiff leave to file an amended complaint naming Officer Simmons as a defendant; (2) granted Defendant leave to take Plaintiff's deposition following the filing of the amended complaint; and (3) ordered Defendant to file a motion for summary judgment following the deposition.  Id.

Plaintiff filed his Amended Complaint on September 21, 2015, adding Former Commissioner Ramsey and Officers Simmons and Little as defendants, and reasserting claims against the City. ECF No. 11.  In his Amended Complaint, Plaintiff alleges that, prior to the April 13, 2013, incident, he had filed a previous lawsuit against the 19th District of the Philadelphia Police Department.  Id. at ¶ 15.  He alleges that Officers Simmons and Little stopped, searched, and arrested him during the incident

---

[5]       The Court did not address the motion for judgment on the pleadings, which was rendered moot by the Court's later order dismissing Plaintiff's initial complaint and ordering Plaintiff to file an amended complaint.  See ECF No. 10.

at issue in this case in retaliation for his filing of the
previous lawsuit.  Id. at ¶¶ 11-12, 15.

Plaintiff asserts claims under 42 U.S.C. § 1983 and
Pennsylvania state law for (1) retaliation; (2) excessive force;
(3) unreasonable search and seizure; (4) violation of equal
protection rights; (5) false arrest; (6) false imprisonment;
(7) abuse of process; (8) malicious prosecution; (9) intentional
infliction of emotional distress; (10) respondeat superior
liability as to the City and Former Commissioner Ramsey;
(11) supervisory liability as to the City and Former
Commissioner Ramsey; and (12) violation of Plaintiff's Miranda
rights.  Id.  Plaintiff seeks a declaratory judgment that
Defendants' actions violated his rights, $500,000 in
compensatory damages, $500,000 in punitive damages, and
reasonable costs and fees.  Id.

Rather than following the Court's instruction to take
Plaintiff's deposition, on October 6, 2015, Defendants moved to
dismiss and/or strike Plaintiff's Amended Complaint, ECF No. 12,
which Plaintiff opposed, ECF No. 13.  The Court granted
Defendants' motion to dismiss as to Plaintiff's claims against
the City, but denied the motion with respect to the other
Defendants.  ECF No. 17.  The Court again instructed Defendants
to file a motion for summary judgment after taking Plaintiff's
deposition.  Id.

The remaining Defendants took Plaintiff's deposition in November 2015, and they filed a motion for summary judgment with respect to all claims asserted against them on February 8, 2016.  ECF No. 19.  Following a telephone conference with the parties, the Court stayed Plaintiff's claims against Former Commissioner Ramsey pending a ruling on Defendants' motion for summary judgment as to the claims against Officers Simmons and Little.  ECF No. 20.  The Court explained that, because Plaintiff's claims against Former Commissioner Ramsey are based on a theory of supervisory liability for the acts of Officers Simmons and Little, if Plaintiff's claims against the officers do not survive summary judgment, there is no need for the Court to consider Plaintiff's claims against Ramsey.  Id.

Plaintiff filed a response in opposition to Defendants' motion for summary judgment, ECF No. 22, as well as a separate "Motion to Strike and or Deny Defendant's Motion for Summary Judgment," ECF No. 23.  Defendants' motion for summary judgment is now ripe for disposition.

## IV.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A motion for summary judgment will not be defeated by 'the mere

existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). In short, the essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

A document filed pro se is to be "liberally construed" and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). In

10

addition, when considering a motion in a pro se plaintiff's
proceedings, a court must "apply the applicable law,
irrespective of whether a pro se litigant has mentioned it by
name." Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48
(3d Cir. 1999).  However, on a motion for summary judgment, "a
pro se plaintiff is not relieved of his obligation under Rule 56
to point to competent evidence in the record that is capable of
refuting a defendant's motion for summary judgment." Ray v.
Fed. Ins. Co., No. 05-2507, 2007 WL 1377645, at *3 (E.D. Pa. May
10, 2007).  "[M]erely because a non-moving party is proceeding
pro se does not relieve him of the obligation under Rule 56(e)
to produce evidence that raises a genuine issue of material
fact." Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 408
(E.D. Pa. 2000).[6]

## V.   DISCUSSION

In their motion for summary judgment, Defendants first
argue that all of Plaintiff's federal claims against Officer

---

[6]          Given the sophistication of the submissions by
Plaintiff, including the selection of claims and the extensive
and appropriate citations to case law, it seems unlikely that
Plaintiff, who is not a lawyer or someone with a legal
background, would have drafted these submissions.  Rather, it
appears the written submissions have been prepared by, or with
substantial assistance from, a "ghostwriter."  This kind of
situation, where Plaintiff is proceeding pro se in theory, but
has the advice of counsel in fact, places the Court in a
difficult position with respect to the requirement to liberally
construe Plaintiff's pro se submissions.  Regardless, in this
case, the complaint will be liberally construed.

Little and Former Commissioner Ramsey fail as a matter of law because neither of those Defendants participated in the alleged wrongs, as required for a claim brought pursuant to 42 U.S.C. § 1983.  See Defs.' Mem. Law Support Mot. Summ. J., ECF No. 19, 8-10 [hereinafter Defs.' Mem.].  Next, Defendants argue that Plaintiff fails to demonstrate a genuine issue of material fact with respect to every one of his claims.  See id. at 10-27. Defendants further argue that Plaintiff's federal claims against Officers Simmons and Little are barred by the doctrine of qualified immunity, and that Plaintiff's state law claims are barred by the Pennsylvania Tort Claims Act.  See id. at 27-30. Finally, Defendants argue that Plaintiff is not entitled to punitive damages.  See id. at 30.

In response, Plaintiff argues that, with the exception of his Miranda claim and his claim for intentional infliction of emotional distress, both of which he concedes are not viable, there are genuine issues of material fact with respect to each of his federal and state claims.[7]  See Pl.'s Mem., ECF No. 22. He also argues that Defendants are not entitled to qualified immunity because his constitutional rights were clearly

---

[7]     As Plaintiff concedes to the dismissal of Counts Nine and Twelve of the Amended Complaint, Plaintiff's Miranda and intentional infliction of emotional distress claims, the Court will grant Defendants' motion for summary judgment with respect to those claims.

12

established, id. at 22-23, and that he is entitled to punitive

damages, id. at 15-17.

Plaintiff also filed a separate motion to strike

and/or deny Defendants' motion for summary judgment on the basis

that Defendants failed to file a separate statement of

undisputed material facts, which Plaintiff avers is required

under the Local Rules.  Pl.'s Mot. to Strike, ECF No. 23.  As

neither the Local Rules of Civil Procedure nor this Court's

Outline of Pretrial and Trial Procedures requires a party moving

for summary judgment to submit a separate statement of

undisputed material facts, the Court will deny Plaintiff's

motion to strike.[8]

---

[8]      Plaintiff cites Equipment Finance, LLC v. Hutchison,
No. 09-1964, 2010 WL 3791481 (E.D. Pa. Sept. 24, 2010), in
support of his motion to strike.  Pl.'s Mot. to Strike at 3.  In
Equipment Finance, Judge Gardner denied the defendants' motion
for summary judgment because they failed to adhere to Judge
Gardner's Rule 16 Status Conference Order, which required any
party filing a motion for summary judgment to file "a separate
short concise statement, in numbered paragraphs, of the material
facts about which the moving party contends there is no genuine
dispute." Id. at *5.  Judge Gardner noted that several district
courts within the Third Circuit impose such a requirement by
local rule, including the United States District Courts for the
Middle District of Pennsylvania, the Western District of
Pennsylvania, the District of New Jersey, and the Virgin Islands
of the United States.  Id. at *5 n.10.  However, the Local Rules
of United States District Court for the Eastern District of
Pennsylvania do not include such a requirement.  See Local R.
Civ. P. 56.1.  Defendants' inclusion of a statement of facts in
their memorandum of law in support of their motion for summary
judgment is sufficient for this Court to evaluate whether or not
Defendants have shown that there are no genuine issues of

A.   <u>Plaintiff's 42 U.S.C. § 1983 Claims</u>

Plaintiff brings claims against Officers Simmons and Little under 42 U.S.C. § 1983 for (1) retaliation (Count One); (2) excessive force in violation of the Fourth Amendment (Count Two); (3) unreasonable search and seizure in violation of the Fourth Amendment (Count Three); (4) violation of the Fourteenth Amendment's Equal Protection Clause (Count Four); and (5) a <u>Miranda</u> violation (Count Twelve).[9]  Am. Compl. ¶¶ 18-25, 40.

Section 1983 provides a civil remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  "Section 1983 does not by itself confer substantive rights, but instead provides a remedy for redress when a constitutionally protected right has been violated."  <u>Goff v. Kutztown Univ.</u>, 63 F. Supp. 3d 475, 480 (E.D. Pa. 2014) (citing <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 816 (1985)).

With respect to each of Plaintiff's § 1983 claims, Defendants argue that Plaintiff has failed to establish a violation of a constitutional right as a matter of law.  <u>See</u> Defs.' Mem. at 10-14, 20-24, 26-27.  Defendants further argue

---

material fact, as they are required to do under Federal Rule of Civil Procedure 56.

[9]      In Count Eleven, Plaintiff brings a claim for supervisory liability against Former Commissioner Ramsey, <u>id.</u> at ¶¶ 38-39, which, as previously mentioned, the Court has stayed, <u>see</u> ECF No. 20.

that, to the extent any issue of material fact exists with respect to the violation of Plaintiff's constitutional rights, qualified immunity protects Officers Simmons and Little from liability.  See id. at 27-28.  Defendants also argue that Plaintiff's federal claims against Officer Little and Former Commissioner Ramsey fail because neither of them participated in the alleged wrongdoings.  Id. at 8-10.

For the reasons discussed below, all of Plaintiff's claims against Officers Simmons and Little under § 1983 fail as a matter of law, with the exception of Plaintiff's claims against Officer Simmons for excessive force and unreasonable search and seizure in violation of the Fourth Amendment.

1.   Count One: Retaliation

Count One of Plaintiff's complaint alleges that Officers Simmons and Little violated Plaintiff's right to be free from retaliation for protected First Amendment conduct. Am. Compl. ¶ 19.  Specifically, Plaintiff alleges that Officers Simmons and Little arrested and detained him in retaliation for filing a previous lawsuit against other police officers in their district.  Id.

To prevail on a First Amendment retaliation claim, a plaintiff must prove "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary

firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)).

Defendants do not appear to dispute that Plaintiff's filing of his previous civil action is protected First Amendment conduct.[10] Instead, Defendants argue that Plaintiff's retaliation claim fails as a matter of law because (1) Plaintiff has not demonstrated that criminal charges were pressed against him without probable cause; and (2) Plaintiff cannot prove that Officers Simmons and Little were aware of his previous lawsuit or that it motivated their actions. Defs.' Mem. at 20-22. In response, Plaintiff argues that there is a factual dispute regarding causation because (1) Plaintiff was treated differently from a similarly situated person, the woman with whom he had an argument; (2) the charges filed against Plaintiff were eventually dropped; and (3) Plaintiff settled a previous lawsuit for similar conduct. Pl.'s Mem. at 19-21.

---

[10]     Indeed, it is axiomatic that the filing of a lawsuit is protected conduct under the First Amendment. See Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) (finding that plaintiff's filing of an EEOC complaint and employment discrimination suit constituted protected activity for the purposes of a retaliation claim, because "[t]he Supreme Court has consistently held that an individual's constitutional right of access to court is protected by the First Amendment's clause granting the right to petition the government for grievances.").

In support of their first argument, Defendants contend that "when the alleged retaliation is a criminal prosecution, the plaintiff must also demonstrate that the underlying criminal charges were pressed without probable cause." Defs.' Mem. at 20-21 (citing Hartman v. Moore, 547 U.S. 250, 265-66 (2006)). Because, Defendants argue, Officer Simmons had probable cause to arrest Plaintiff, Plaintiff cannot bring a retaliation claim based on the arrest. Id. at 21.

In Hartman, the Supreme Court held that the absence of probable cause "must be pleaded and proven" for a plaintiff to prevail on "a claim that prosecution was induced by an official bent on retaliation" in an action brought under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).[11]  547 U.S. at 265-66. Defendants are correct that Officer Simmons indisputably had probable cause to arrest Plaintiff, as Plaintiff concedes that the arrest occurred after Officer Simmons located drugs on Plaintiff's person. See Price Dep. 43:16-19. Here, however, unlike the plaintiff in Hartman, Plaintiff alleges that his arrest was the retaliatory action, not his prosecution. Am. Compl. ¶ 19 (alleging that "this arrest was provoked by [retaliation]"). Thus, Hartman does not itself bar Plaintiff's claim. Further, in Reichle v. Howards,

---

[11]        "[A] Bivens action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." Hartman, 547 U.S. at 254 n.2.

566 U.S. 658 (2012), the Supreme Court explicitly declined to extend Hartman's probable cause rule to retaliatory arrests, as opposed to retaliatory prosecutions, see id. at 2096, and it is unclear whether Hartman applies to retaliatory arrests in this Circuit.[12]

In any event, the Court need not decide whether to apply the Hartman rule to a retaliatory arrest in this case, because Plaintiff's claim fails for the separate reason that Plaintiff has not established a causal connection between the filing of his lawsuit and the allegedly retaliatory arrest, as required to prevail on a First Amendment retaliation claim. Plaintiff has not presented any facts, either in his Amended Complaint or at his deposition, suggesting that either Officer Simmons or Officer Little was aware of his prior action against the Philadelphia Police Department.  The Third Circuit has

---

[12]    The Third Circuit has not yet decided whether Hartman applies to retaliatory arrests.  See Primrose v. Mellot, 541 Fed. App'x 177, 180 (3d Cir. 2013) (non-precedential) ("We have not decided whether the logic of Hartman applies to retaliatory arrest claims. . . .").  Defendants cite Favata v. Siedel, 511 Fed. App'x 155 (3d Cir. 2013) (non-precedential), in which the Third Circuit applied the Hartman rule where the allegedly retaliatory action was a citation issued by a police officer. Id. at 158-59.  Defendants also cite Albert v. Weaver, No. 05-2380, 2007 WL 2343830, at *6-7 (M.D. Pa. Aug. 15, 2007), which held that Hartman applied to a claim based on a police officer's issuance of a citation.  Defs.' Mem. at 20-21.  The instant action is distinguishable from Favata and Albert because it involves a retaliatory arrest, not the issuance of a citation - and in any event, neither decision is binding on this Court.

generally required a plaintiff to establish that the defendant
is aware of the protected activity in order to prevail on a
First Amendment retaliation claim.  See Gorum v. Sessoms, 561
F.3d 179, 188 (3d Cir. 2009) (citing Ambrose v. Twp. of
Robinson, 303 F.3d 488, 493 (3d Cir. 2002) (explaining that
"[i]t is only intuitive that for protected conduct to be a
substantial or motivating factor in a decision, the
decisionmakers must be aware of the protected conduct")).  Thus,
Plaintiff's failure to establish Officer Simmons' and Officer
Little's awareness of his constitutionally protected conduct
itself precludes a finding of a causal connection.

Further, to establish a causal connection, Plaintiff
must "prove either (1) an unusually suggestive temporal
proximity between the protected activity and the allegedly
retaliatory action, or (2) a pattern of antagonism coupled with
timing." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir.
2007).  Plaintiff has not produced either type of evidence.

Plaintiff's complaint does not contain any allegations
relating to the timing of the filing of his lawsuit against the
Philadelphia Police Department, with the exception of
Plaintiff's conclusory statement that "causation . . . can be
shown through . . . the temporal proximity of arrest."  Am.
Compl. ¶ 19.  However, at his deposition, Plaintiff stated that
he filed the lawsuit in 2011.  Price Dep. 10:12-14.  The

allegedly retaliatory action took place on April 13, 2013.  Id. at 13:12-16.  Based on these facts, at least sixteen months elapsed between the protected activity and the allegedly retaliatory action.  That time period is simply too long to be "an unusually suggestive temporal proximity" that creates an inference of causation.  See, e.g., Marra v. Phila. Hous. Auth., 497 F.3d 286, 303 n.14 (3d Cir. 2007) (noting it is "undoubtedly correct" that a nine-month time period between protected activity and alleged retaliation, standing alone, is not sufficient to create an inference of causation); Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) ("[W]e have held that such an inference could be drawn where two days passed between the protected activity and the alleged retaliation, but not where 19 months had elapsed." (citations omitted)).

In the absence of an "unusually suggestive" temporal proximity, Plaintiff must establish a "pattern of antagonism coupled with timing," which he has not done.  DeFlaminis, 480 F.3d at 267.  Plaintiff stated at his deposition that he has had "incidents where [he was] pulled over by police in the same district."  Price Dep. 12:16-13:6.  However, Plaintiff claimed that the officers involved in those incidents made comments about his previous conviction for assault, not his previous lawsuit against the Philadelphia Police Department, which he alleges motivated Officer Simmons' and Little's actions.  See

20

id.  Plaintiff does not allege any other antagonistic events,
and in any case, Plaintiff does not allege that Officers Simmons
or Little, specifically, had ever interacted with him at all
aside from the day in question.

Based on these facts, there is simply no evidence in
the record from which a reasonable juror could conclude that
there exists a causal link between Plaintiff's filing of his
lawsuit against the Philadelphia Police Department in 2011 and
the incident with Officers Simmons and Little on April 13, 2013.
Accordingly, the Court will grant Defendants' motion for summary
judgment with respect to Plaintiff's retaliation claim against
Officers Simmons and Little.

### 2.   Count Two: Excessive Force

In Count Two, Plaintiff brings a claim for excessive
force in violation of the Fourth Amendment, alleging that
Officers Simmons and Little used excessive force by grabbing and
handcuffing Plaintiff without cause.  Am. Compl. ¶ 21.  At his
deposition, Plaintiff stated that Officer Simmons "threw"
Plaintiff up against the police car and handcuffed him after
Plaintiff walked away from the police officers.  Price Dep.
28:24-29:1.  Plaintiff stated that he was thrown against the car
"[w]ith force, but not with that much force," id. at 29:6-7, and
has admitted that he suffered no physical injuries from the

incident, id. at 48:4-6.  Defendants' primary argument in
support of their motion for summary judgment on Plaintiff's
excessive force claim is that "[s]uch minimal use of force" is
insufficient to state a claim for excessive force.  Defs.' Mem.
at 10-11.

Whether a police officer used excessive force in
violation of a citizen's Fourth Amendment rights depends on
whether the amount of force used was "objectively reasonable."
Graham v. Connor, 490 U.S. 386, 397 (1989); see also Curley v.
Klem, 499 F.3d 199, 206 (3d Cir. 2007).  To determine objective
reasonableness, the "nature and quality of the intrusion on the
individual's Fourth Amendment interests" is balanced "against
the countervailing governmental interests at stake."  Graham,
390 U.S. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8
(1985)).

Objective reasonableness is evaluated from "the
perspective of a reasonable officer on the scene, rather than
with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396.
The Supreme Court has recognized that "police officers are often
forced to make split-second judgments – in circumstances that
are tense, uncertain, and rapidly evolving – about the amount of
force that is necessary in a particular situation."  Id. at 397.
For that reason, "'[n]ot every push or shove, even if it may
later seem unnecessary in the peace of a judge's chambers,'

22

violates the Fourth Amendment." Id. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).  However, the "reasonableness" inquiry must be objective:  "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Graham, 490 U.S. at 397.

Determining whether a particular police officer's actions were objectively reasonable is a "highly individualized and fact specific" inquiry that requires a court to consider the "totality of the circumstances." Santini v. Fuentes, 795 F.3d 410, 417 (3d Cir. 2015) (quoting Curley, 499 F.3d at 207). Courts may consider "(1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and (3) whether the suspect attempts to resist arrest or flee the scene." Id. at 417 (citing Graham, 490 U.S. at 396).  Other relevant factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810,

822 (3d Cir. 1997), abrogated on other grounds by Curley, 499 F.3d at 209-11.

"The reasonableness of the use of force is normally an issue for the jury." Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004); see also Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (reversing district court order granting summary judgment for defendants on excessive force claim because there were "material issues of disputed fact and credibility determinations that cannot be decided on a motion for summary judgment"). However, "summary judgment is appropriate if, as a matter of law, the evidence would not support a reasonable jury finding that the police officers' actions were objectively unreasonable." Groman, 47 F.3d at 634; see also Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999) ("[D]efendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." (quoting Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994))).

a. Officer Simmons

Contrary to Defendants' assertions, Plaintiff's allegation that Officer Simmons threw him against the car is sufficient to state a claim for excessive force as a matter of

24

law.  An excessive force claim does not require proof of physical injury.  See Sharrar, 128 F.3d at 822 ("We do not agree that the absence of physical injury necessarily signifies that the force has not been excessive, although the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as a part of the totality.").  Indeed, courts in the Third Circuit have denied summary judgment on excessive force claims in cases where a police officer allegedly threw, slammed, or shoved a plaintiff against a vehicle.  See, e.g., Wood v. Se. Pa. Transp. Auth., No. 14-4183, 2016 WL 2619411, at *7-9 (E.D. Pa. May 16, 2016) (determining that a reasonable jury could conclude that slamming the plaintiff against a vehicle was objectively unreasonable under the circumstances); Clifton v. Borough of Eddystone, 824 F. Supp. 2d 617, 629-30 (E.D. Pa. 2011) (concluding that "a reasonable jury could find 'yanking' [the] [p]laintiff out of the car and 'slamming' her against the trunk of the car were excessive" under the circumstances); Verdier v. Borough, 796 F. Supp. 2d 606, 626-27 (E.D. Pa. 2011) (denying summary judgment on excessive force claim where officer allegedly slammed the plaintiff against his car).

    While Plaintiff concedes that Officer Simmons' use of force was minimal, there does not appear to have been much, if any, justification for the use of force at all.  Taking the

25

facts in the light most favorable to Plaintiff, he was engaged in a non-physical, verbal dispute with a woman, and he attempted to walk away when police officers approached him.  Nothing in Plaintiff's behavior or actions suggested that Plaintiff was violent or dangerous, armed, or an imminent threat to the safety of the police officers or others in the vicinity.  It is unclear what crime the police officers suspected Plaintiff had committed or was committing prior to approaching him – even based on the officers' own affidavits – and the "severity of the crime at issue" therefore cannot justify Officer Simmons' use of force. Nor does "the number of persons with whom the police officers must contend" suggest that force was necessary: neither party claims that Plaintiff's acquaintance was involved in the interaction between the officers and Plaintiff, and thus Plaintiff was alone in an interaction with two police officers.

        The sole possible justification for Officer Simmons' use of force is that Plaintiff walked away when the police officers approached him.  On this basis, Defendants argue, Officer Simmons was "entitled" to use "physical coercion" to "investigate the situation" involving Plaintiff and his female acquaintance.  Defs.' Mem. at 11.  However, this is not a case where Plaintiff was "actively resisting or attempting to evade arrest by flight," see Graham, 490 U.S. 397.  There is no indication that the police officers were attempting to arrest

26

Plaintiff prior to the moment he started walking away, and there is a factual dispute as to whether Plaintiff's actions constituted "flight" at all.  Plaintiff stated that he was only walking, not running, away, and that he did so solely because he had previously had negative interactions with police officers. Price Dep. 27:2-28:7.

Construing the facts in the light most favorable to Plaintiff, there are genuine issues of material fact regarding whether Plaintiff's actions justified Officer Simmons' use of force against him.  A reasonable jury could find that Officer Simmons' use of force was excessive under the circumstances. Therefore, the Court cannot conclude that Officer Simmons' use of force against Plaintiff was objectively reasonable as a matter of law.

Defendants argue that even if there are issues of material fact with respect to Plaintiff's excessive force claim, the Court should grant summary judgment for Defendants on that claim because Officer Simmons is entitled to qualified immunity as a matter of law.  The Court disagrees.

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v.

27

Fitzgerald, 457 U.S. 800, 818 (1982)).  The doctrine balances
"the need to hold public officials accountable when they
exercise power irresponsibly" with "the need to shield officials
from harassment, distraction, and liability when they perform
their duties reasonably."  Id.  To determine whether qualified
immunity bars a plaintiff's constitutional claims, a court
evaluates "(1) whether the plaintiff has alleged the deprivation
of an actual constitutional right, and if so, (2) whether the
right was clearly established at the time of the alleged
violation."  United Artist Theatre Circuit, Inc. v. Twp. of
Warrington, 316 F.3d 392, 398 (3d Cir. 2003) (citing Saucier v.
Katz, 533 U.S. 194, 200 (2001)).  In Pearson, the Supreme Court
clarified that the order of the inquiry is not mandatory, and a
district court may use its discretion to consider these two
steps in whichever order "will best facilitate the fair and
efficient disposition of each case."  555 U.S. at 242.

On a motion for summary judgment, it is appropriate
for a district court to consider the issue of qualified immunity
"where the dispute does not turn upon 'which facts the parties
might be able to prove, but, rather, whether or not certain
given facts showed a violation of clearly established law.'"
Reilly v. City of Atl. City, 532 F.3d 216, 234 (3d Cir. 2008)
(quoting Wright v. City of Phila., 409 F.3d 595, 599 (3d Cir.
2005)).  If the facts relevant to that determination "are

28

intensely disputed, . . . [Third Circuit] precedent makes clear that such disputes must be resolved by a jury after a trial." Curley, 499 F.3d at 208.

Here, there are disputed issues of material fact regarding both the amount of force used and Officer Simmons' potential justification for the use of force.  As a result, the Court finds that Officer Simmons is not entitled to qualified immunity at this time.  See, e.g., Wood, 2016 WL 2619411, at *8-9 (rejecting qualified immunity defense for excessive force claim based on officer slamming plaintiff against his vehicle); Verdier, 796 F. Supp. 2d at 631 (same).  The Court will therefore deny Defendants' motion for summary judgment with respect to Plaintiff's claim against Officer Simmons in Count Two of the Amended Complaint.

b.   Officer Little

Defendants argue that all of Plaintiff's federal claims against Officer Little, including Plaintiff's excessive force claim, must be dismissed because Plaintiff did not attribute any actions to Officer Little at his deposition.  See Defs.' Mem. at 9.  In fact, Defendants state, Plaintiff admitted that Officer Simmons "was the one that was actually doing all of the stuff to me."  Id. (quoting Price Dep. 14:3-5).  Therefore, Defendants argue, Plaintiff has failed to demonstrate Officer

Little's personal involvement in the alleged wrongs, as required in a § 1983 action, and Plaintiff's claims against Officer Little must fail.  <u>See</u> Defs.' Mem. at 9-10.

Under § 1983, a state actor "is only liable for his or her own misconduct."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677 (2009).  Accordingly, Plaintiff must establish that each individual state actor defendant played an affirmative part in the alleged misconduct.  <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).  This requirement of "personal involvement in the alleged wrongs" may "be shown through allegations of personal direction or of actual knowledge and acquiescence."  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207-1208 (3d Cir. 1988) (citing <u>Parratt v. Taylor</u>, 451 U.S. 527, 537 n.3 (1981)).  A showing of actual knowledge "must be made with appropriate particularity."  <u>Id.</u> at 1207.

Plaintiff's excessive force claim against Officer Little fails under this standard.  The Third Circuit has held that "a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force."  <u>Smith v. Mensinger</u>, 293 F.3d 641, 650 (3d Cir. 2002).  Specifically, if an officer "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."  <u>Id.</u> at 650 (quoting <u>Byrd v. Clark</u>, 783 F.2d

1002, 1007 (11th Cir. 1986)).  However, the officer is only liable "if there is a realistic and reasonable opportunity to intervene."  Id.  Here, there are no facts in the record suggesting Officer Little had a "realistic and reasonable" opportunity to intervene in any possible use of excessive force, as Plaintiff does not even recall seeing Officer Little on the day of the incident.  See Price Dep. 14:14-15:4.  Therefore, the Court will grant summary judgment for Defendants on Plaintiff's excessive force claim against Officer Little.

### 3.   Count Three: Unreasonable Search and Seizure

In Count Three of his Amended Complaint, Plaintiff brings a claim for unreasonable search and seizure in violation of the Fourth Amendment.  Am. Compl. ¶ 23.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Whether a search or seizure is unreasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself."  Skinner v. Ry. Labor Execs.' Ass'n, 489 U.S. 602, 616 (1989) (quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985)).  A court's inquiry involves assessing "on the one hand, the degree to which [the search or seizure] intrudes upon an individual's privacy

and, on the other, the degree to which [the search or seizure] is needed for the promotion of legitimate governmental interests." Wyoming v. Houghton, 526 U.S. 295, 300 (1999).

A person is "seized" for purposes of the Fourth Amendment if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). There are three broad categories of interactions between citizens and the police, each involving "varying degrees of constitutional scrutiny": "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." United States v. Brown, 765 F.3d 278, 288 (3d Cir. 2014) (quoting United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006)).

The first category is not a "seizure" and does not implicate the Fourth Amendment. Florida v. Bostick, 501 U.S. 429, 434 (1991); United States v. Williams, 413 F.3d 347, 352 (3d Cir. 2005) (officers do not violate the Fourth Amendment "merely by approaching individuals on the street or in other public places" (quoting United States v. Drayton, 536 U.S. 194, 200 (2002))). When a police officer stops and detains a citizen for a brief period, but the detention does not rise to the level of an arrest – an interaction know as a "Terry stop" – the

32

Fourth Amendment requires the police officer to have reasonable, "articulable suspicion" for the interaction.  Terry v. Ohio, 392 U.S. 1, 33 (1968); see also Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (noting that an officer may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot").  The third category, a full-scale arrest, requires a police officer to have probable cause.  Beck v. Ohio, 379 U.S. 89, 91 (1964).

Here, based on Plaintiff's version of events, the interaction between Plaintiff and Officers Simmons and Little can be separated into four distinct stages: (1) the police officers' initial approach; (2) Officer Simmons' initial physical contact with Plaintiff; (3) Officer Simmons' search of Plaintiff's person; and (4) the arrest.  As there are no facts in the record suggesting that Officer Little had any "personal involvement in the alleged wrongs," Rode, 845 F.2d 1195 at 1207-08, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's unreasonable search and seizure claim against Officer Little.[13]

---

[13]     As previously discussed, Plaintiff does not even recall seeing Officer Little on the day of the arrest.  See Price Dep. 15:4.  In addition, Officer Little claims that he walked away to speak with Plaintiff's female acquaintance after Officer Simmons placed Plaintiff in handcuffs.  See Little Decl. ¶¶ 10-11.

With respect to Officer Simmons, construing all of the facts in the light most favorable to Plaintiff and for the reasons discussed below, the Court concludes that Officer Simmons' initial physical contact with Plaintiff constituted, at minimum, a brief seizure, for which reasonable suspicion was required.  Probable cause indisputably existed for Plaintiff's arrest, as Plaintiff admits that Officer Simmons located crack cocaine on his person.[14]  See Price Dep. 43:16-19.  The Court will therefore address whether there are disputed issues of material fact regarding Officer Simmons' reasonable suspicion for the seizure and justification for the search.

a.  Seizure

Defendants claim that the police officers' "initial approach" of Plaintiff did not rise above the level of a "mere

---

[14]        "Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990) (citing Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979)).  The existence of probable cause is usually a question of fact for the jury.  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).  "However, a district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to [the] [p]laintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly."  Id. at 788-89 (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).  Here, Officer Simmons' discovery of crack cocaine, the possession of which is a criminal offense, on Plaintiff's person is sufficient to establish probable cause as a matter of law.

encounter." Defs.' Mem. at 13 (internal quotation marks omitted). As the Supreme Court has explained, "[s]o long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." Bostick, 501 U.S. at 434 (citation omitted) (quoting California v. Hodari D., 499 U.S. 621, 628 (1991)). However, an encounter between a police officer and a citizen "loses its consensual nature," and a seizure implicating the Fourth Amendment occurs, "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Id. (quoting Terry, 392 U.S. at 19 n.16).

Perhaps Defendants are correct that when they initially approached Plaintiff, he felt "free to disregard the police and go about his business." Bostick, 501 U.S. at 434 (quoting Hodari D., 499 U.S. at 628). Indeed, Plaintiff started to walk away. However, once Officer Simmons grabbed Plaintiff and placed handcuffs on him, Officer Simmons restrained Plaintiff's liberty, and a seizure occurred. At that point, Officer Simmons was required to have "reasonable, articulable suspicion that criminal activity is afoot" to seize Plaintiff lawfully. See Wardlow, 528 U.S. at 123.

Whether a seizure is reasonable depends on (1) "whether the officer's action was justified at its

35

inception," and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20. "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21.

Here, Defendants argue that Officer Simmons had reasonable suspicion to stop Plaintiff based upon (1) Plaintiff's "[n]ervous, evasive behavior," including Plaintiff's "attempt to evade" the police officers by walking away when they approached him, and (2) the "altercation" between Plaintiff and his acquaintance. Defs.' Mem. at 13-14.

The Supreme Court has recognized that "nervous, evasive behavior is [a] pertinent factor in determining reasonable suspicion." Wardlow, 528 U.S. at 124. Further, "[h]eadlong flight--wherever it occurs--is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Id. However, as the Third Circuit has repeatedly stated, "the Supreme Court has never held that unprovoked flight alone is enough to justify a stop." United States v. Navedo, 694 F.3d 463, 472 (3d Cir. 2012) (quoting United States v. Bonner, 363 F.3d 213, 217 (3d Cir. 2004)). Rather, "flight upon noticing police, plus some other

36

indicia of wrongdoing, can constitute reasonable suspicion."
Id. (quoting Bonner, 363 F.3d at 217).

Here, the only "nervous, evasive behavior" that any
party alleges occurred is Plaintiff's movement away from the
police officers.  Merely walking away from a police officer is
not "headlong flight," and Plaintiff and Defendants dispute
whether Plaintiff was walking or running away.  Compare Little
Decl. ¶ 8, Simmons Decl. ¶ 7 (Plaintiff "attempted to push past
[them] and run from the scene") with Price Dep. 24:13-20
(Plaintiff "just walked away, because [he] didn't want any
interference with the police").  Moreover, even if Plaintiff's
actions did constitute flight, there is no other "indicia of
wrongdoing" that, combined with Plaintiff's flight, could have
created reasonable suspicion as a matter of law.  There are no
facts indicating that the officers had any reason to believe
Plaintiff was armed or dangerous, or that he was carrying any
drugs or engaged in any criminal activity.  Cf. United States v.
Figueroa, No. 15-98, 2015 WL 7756008, at *4 (D.N.J. Nov. 30,
2015) ("But this was not mere flight; this was flight from the
police, after their actual observation of defendant's
concealment of a handgun.").  Nor is there any indication that
the officers attempted to speak with Plaintiff before he walked
away.  Cf. United States v. Samuels, 131 Fed. App'x 859, 862-63
(3d Cir. 2005) (non-precedential) (holding that police officers

had reasonable suspicion to seize the plaintiff based on an anonymous tip, a visible bulge in the plaintiff's waist band, and the plaintiff's nervous behavior, refusal to answer questions, and attempt to walk away).

The only facts Defendants identify that could have contributed to reasonable suspicion, aside from Plaintiff's "flight," relate to the interaction between Plaintiff and his female acquaintance, as that was the only other event preceding Officer Simmons' decision to grab and handcuff Plaintiff.  As an initial matter, the parties have a minor disagreement regarding the extent of the interaction.  Plaintiff maintains that, although he and his acquaintance "were right in each other's face, close to each other," Price Dep. 23:8-10, neither one touched the other, id. at 20:16-21:2, and the argument was purely verbal.  Defendants instead claim that Office Little observed the woman "grabbing Plaintiff by [his] collar."  Defs.' Mem. at 5 n.2 (citing Simmons Decl. ¶ 5; Little Decl. ¶¶ 5-6).  Regardless of their dispute regarding Plaintiff's acquaintance's movements, however, the parties do not dispute that Plaintiff did not touch his acquaintance during their argument.[15]

---

[15]     Even under Defendants' version of the facts, Plaintiff was, at most, having a verbal argument with a woman who grabbed Plaintiff.  At one point in their papers, Defendants argue that Officers Simmons and Little were operating under the belief, which Defendants agree to treat as mistaken for the purposes of this motion, that "Plaintiff was involved in a physical

Plaintiff contends that his argument with his acquaintance cannot support reasonable suspicion because it is not a crime for two people to argue.  See Pl.'s Mem at 14. Indeed, Plaintiff notes, he was not cited or charged with any crime relating to the argument.  Id.  As the Supreme Court made clear in Wardlow and as the Third Circuit has established, a police officer conducting an investigative stop must have reasonable suspicion of criminal activity.  See Johnson v. Campbell, 332 F.3d 199, 208 (3d Cir. 2003) ("[T]he activity of which the detainee is suspected must actually be criminal." (citing United States v. Ubiles, 224 F.3d 213, 218 (3d Cir. 2000)).  Thus, a verbal argument is simply not sufficient to provide reasonable suspicion for a stop, even when combined with flight.

Under these circumstances, a reasonable jury could conclude that Officer Simmons did not possess reasonable suspicion to stop Plaintiff, and therefore that his seizure of Plaintiff violated Plaintiff's Fourth Amendment rights.

Further, Officer Simmons is not entitled to qualified immunity.  Disputed facts exist that are relevant to determining whether or not Officer Simmons is entitled to qualified

---

altercation with a female on the sidewalk."  Defs.' Mem. at 14. But nothing in the facts of this case, including the declarations from Officers Simmons and Little, suggests that Plaintiff touched his acquaintance or did anything physical; the facts suggest only that his acquaintance may have done so.

immunity.  The requirements that a police officer have
reasonable suspicion for an investigatory stop and reasonable
justification for a safety frisk are clearly established and
have been for quite some time.  See Terry, 293 U.S. at 20, 27.
However, whether or not the "given facts showed a violation of
clearly established law" in this particular case, Reilly, 532
F.3d at 234 (quoting Wright, 409 F.3d at 599), depends on the
resolution of disputed facts, including the nature of
Plaintiff's interaction with his acquaintance and whether
Plaintiff attempted to flee the scene.

           b.   Search

          "[W]hen police officers make an investigative stop,
they may take such steps as are 'reasonably necessary to protect
their personal safety and to maintain the status quo' during the
course of the stop."  United States v. Edwards, 53 F.3d 616, 619
(3d Cir. 1995) (quoting United States v. Hensley, 469 U.S. 221,
235 (1985)).  For example, a police officer may conduct "a
reasonable search for weapons for the protection of the police
officer, where [the officer] has reason to believe that he is
dealing with an armed and dangerous individual, regardless of
whether he has probable cause to arrest the individual."  Terry,
392 U.S. at 27.  To justify such a search, "the police officer
must be able to point to specific and articulable facts which,

taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21.

Here, Officer Simmons claims that he searched Plaintiff because he saw a knife protruding from Plaintiff's left inside jacket pocket. See Simmons Decl. ¶¶ 12-14. Plaintiff does not dispute that he was carrying a knife, see Price Dep. 25:8-26:11, and he stated that it was on the outside of his belt, see id. at 26:10-18, suggesting that it was visible. However, even if the knife were visible, Officer Simmons had no reason to believe that Plaintiff was dangerous, and Plaintiff was already in handcuffs at the time of the search, so a reasonable jury could conclude that the search was not necessary for the protection of the officers. On the facts currently before the Court, therefore, dismissal as a matter of law is not warranted on Plaintiff's claim that Officer Simmons' search was unreasonable in violation of the Fourth Amendment.

\*       \*       \*

As there are genuine disputes of material fact as to whether (1) Officer Simmons had reasonable suspicion to stop and detain Plaintiff, and (2) Officer Simmons had justification to search Plaintiff, the Court will deny Defendants' motion for summary judgment with respect to Plaintiff's unreasonable-search-and-seizure claim against Officer Simmons.

4.   Count Four: Equal Protection

In Count Four of Plaintiff's Amended Complaint, he brings a claim against Officers Simmons and Little under the Equal Protection Clause of the Fourteenth Amendment, alleging that Officers Simmons and Little "intentionally treated Plaintiff differently from similarly situated citizens by arresting him without cause after a verbal dispute with a female."  Am. Compl. ¶ 25.  Plaintiff appears to assert his equal protection claim under the "class of one" theory, which requires Plaintiff to demonstrate that (1) he "has been intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).

Defendants argue that Plaintiff's claim fails as a matter of law because (1) Plaintiff cannot establish that anyone was "similarly situated" to him with respect to his treatment by Officers Simmons and Little; and (2) Plaintiff's admission that he possessed crack cocaine at the time of his arrest "defeats any argument that he was selectively arrested or prosecuted on the basis of any impermissible consideration, out of bad faith, or out of a desire to injure him."  Defs.' Mem. at 23-24.

In response, Plaintiff argues that (1) he was similarly situated to his female acquaintance, who was also

42

having a verbal dispute on the street; (2) Officers Simmons and
Little intentionally treated him differently as retaliation for
the filing of his previous complaint, which was not rationally
related to any legitimate Government interest; and (3) there was
no other rational basis for the differential treatment.  See
Pl.'s Mem. at 22.

        "Persons are similarly situated under the Equal
Protection Clause when they are alike 'in all relevant
aspects.'"  Startzell v. City of Phila., 533 F.3d 183, 203 (3d
Cir. 2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)).
Defendants argue that Plaintiff cannot identify anyone who was
similarly situated because "he admits that no other people that
day were involved in verbal disputes on the street."  Defs.'
Mem. at 24 (citing Price Dep. 11:23-12:15).  However, at his
deposition, Plaintiff stated that there were no other
individuals involved in verbal disputes on the street besides
himself "and the young lady."  Price Dep. 12:7-13 (emphasis
added).  Contrary to Defendants' assertion, Plaintiff did not
state "that he was the only one involved in a dispute."  Defs.'
Mem. at 24.  In fact, it is undisputed that Plaintiff was
engaged in a dispute with another person, and that Officers
Simmons and Little did not question or apprehend her.  Plaintiff
is correct that Officer Simmons' and Little's decision not to
stop or search Plaintiff's acquaintance establishes that the

43

officers treated Plaintiff differently from a similarly situated individual.

However, the Court agrees with Defendants that Plaintiff's claim fails as a matter of law, because Plaintiff cannot establish that the particular differential treatment he alleges in his Amended Complaint had no rational basis. Plaintiff alleges that he was treated differently from similarly situated citizens solely because he was "arrest[ed] without cause after a verbal dispute with a female."  Am. Compl. ¶ 25. In general, a plaintiff bringing a "class of one" claim must demonstrate that any differential treatment was "irrational and wholly arbitrary."  Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 286 (3d Cir. 2004) (quoting Olech, 528 U.S. at 564).  A "class of one" claim, like any equal protection claim evaluated under rational basis review, cannot succeed "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Heller v. Doe, 509 U.S. 312, 320 (1993) (quoting FCC v. Beach Commc'ns, 508 U.S. 307, 313 (1993)).

Regardless of whether or not Officers Simmons and Little had a rational basis for initially stopping and searching Plaintiff but not his acquaintance, they certainly had a rational basis for arresting Plaintiff, but not his acquaintance, after they found drugs on Plaintiff's person.

44

In his opposition, Plaintiff argues that he meets the
first element of an equal protection claim because "Plaintiff's
female companion . . . was not similarly grabbed, handcuffed,
and slammed against a car and then searched." Pl.'s Mem. at 22.
Plaintiff therefore appears to argue that the differential
treatment was the initial stop and seizure, and not the arrest.
Plaintiff might be correct that Officer Simmons did not have a
rational basis to stop Plaintiff as opposed to his
acquaintance.[16] However, Plaintiff alleges in his complaint that
Officers Little and Simmons treated him differently "by
arresting him without cause," Am. Compl. ¶ 25, not by stopping
and seizing him, and Plaintiff cannot add a new basis for an
element of one of his claims at this stage of the proceedings.[17]

---

[16]        Defendants have no reason to believe that Plaintiff's
acquaintance did not also possess crack cocaine. More
importantly, facts that the officers had no knowledge of prior
to the incident could not possibly provide a rational basis for
Officer Simmons to stop and search Plaintiff and not his
acquaintance. At the time that Officers Simmons and Little
stopped Plaintiff, they did not know that he possessed crack
cocaine and had no reason to believe that he did. Indeed, the
crack cocaine itself was suppressed as evidence in Plaintiff's
criminal trial because the trial court determined that Officers
Simmons and Little had no probable cause to believe that
Plaintiff possessed it.

[17]        A plaintiff is permitted to introduce new facts into
the record at the summary judgment stage. See Bell Atl. Corp.
v. Twombly, 550 U.S. 544, 563 (2007) ("[O]nce a claim has been
stated adequately, it may be supported by showing any set of
facts consistent with the allegations in the complaint.").
However, a plaintiff cannot introduce new legal theories or
claims through an opposition to a motion for summary judgment.

Furthermore, even if Plaintiff were to amend his complaint to include the initial stop and seizure as differential treatment, Plaintiff's claim would still fail as a matter of law, because he cannot demonstrate that there is no rational basis for his difference in treatment under the very high standard required in the context of police decisions.  As the Supreme Court has explained, "[t]here are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments."  Engquist v. Or. Dep't of Agric., 553 U.S. 591, 603 (2008) (rejecting a class-of-one claim in the employment context, but discussing police officers' decision to pull over drivers in a traffic stop).

---

See myService Force, Inc. v. Am. Home Shield, No. 10-6793, 2013 WL 180287, at *12 (E.D. Pa. Jan. 17, 2013) ("Federal pleading standards do not allow a party 'to raise new claims at the summary judgment stage.'" (quoting Dewees v. Haste, 620 F. Supp. 2d 625, 635 n.7 (M.D. Pa. 2009))); see also Bell v. City of Phila., 275 Fed. App'x 157, 160 (3d Cir. 2008) (non-precedential) ("A plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'" (quoting Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996))).  The allegedly differential treatment is an element of Plaintiff's equal protection claim, and therefore changing it is not merely adding new facts.  If Plaintiff wishes to pursue an equal protection claim based on a different theory of differential treatment - based on the initial stop and seizure as opposed to the arrest - he would need to seek leave to amend his complaint to include that claim.

46

Therefore, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's equal protection claim.

B.   <u>Plaintiff's State Law Claims</u>

Plaintiff brings Pennsylvania state law claims against Officers Simmons and Little for the torts of (1) false arrest (Count Five), (2) false imprisonment (Count Six), (3) abuse of process (Count Seven), (4) malicious prosecution (Count Eight), and (5) intentional infliction of emotional distress (Count Nine).   In Count Ten, which the Court has stayed, Plaintiff brings a claim against Former Commissioner Ramsey under the doctrine of <u>respondeat superior</u>, alleging that Ramsey is responsible for the tortious actions of Officers Simmons and Little.   In their motion for summary judgment, Defendants argue that all of Plaintiff's state law claims fail as a matter of law, and that all of Plaintiff's state law claims against Officers Simmons and Little are barred by Pennsylvania's Political Subdivision Tort Claims Act ("the PSTCA" or "the Act").

For the reasons discussed below, all of Plaintiff's state law claims against Officers Simmons and Little fail as a matter of law.   As none of Plaintiff's state law claims survive summary judgment, the Court need not address whether the

officers' conduct constituted "actual malice" or "willful misconduct," as Plaintiff would need to prove in order to overcome the PSTCA.[18]

### 1.   Counts Five and Six: False Arrest and False Imprisonment

In Counts Five and Six, Plaintiff brings Pennsylvania state law claims against Officers Simmons and Little based on the torts of false arrest and false imprisonment.  Under Pennsylvania law, the tort of false arrest requires a plaintiff to establish either "1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so."  Renk v. City of Pittsburgh, 641 A.2d 289, 295 n.2 (Pa. 1994).  A claim for false imprisonment under Pennsylvania law, similarly,

---

[18]        Under the PSTCA, "[a]n employee of a local agency is liable for civil damages on account of any injury to a person . . . caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency. . . ."  42 Pa. Cons. Stat. Ann. § 8545.  In Pennsylvania, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  Id. § 8541.  Therefore, local agency employees, like Officers Little and Simmons, are generally immune from suit for personal injury caused by their acts within the scope of their duties.  However, the Act includes an exception to immunity if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct."  Id. § 8550.  "[W]illful misconduct means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue," such that the actor's desire can be implied.  Evans v. Phila. Transp. Co., 212 A.2d 440, 443 (Pa. 1965).

requires a plaintiff to prove that (1) he had been detained and
(2) the detention was unlawful.  Gwynn v. City of Phila., 719
F.3d 295, 304 n.4 (3d Cir. 2013) (citing Renk, 641 A.2d at
293)).

Plaintiff's false arrest and false imprisonment claims
both require Plaintiff to show that Officers Simmons and Little
did not have probable cause to arrest him.  Defendants argue
that both claims fail because it is undisputed that Officer
Simmons located crack cocaine on Plaintiff's person prior to the
arrest, which established probable cause for the arrest.  See
Defs.' Mem. at 15-16.  Defendants further assert that probable
cause existed for Plaintiff's arrest (1) even though the
evidence the officers seized was suppressed in Plaintiff's
criminal proceedings, because the exclusionary rule does not
apply to § 1983 actions; and (2) even if Officer Simmons
initially lacked reasonable suspicion to stop and search
Plaintiff, because the "fruit of the poisonous tree" doctrine
does not apply to § 1983 actions, either.  Id. at 15-16 & n.8.

In response, Plaintiff appears to argue, essentially,
that Officers Simmons and Little did not have probable cause to
arrest him because they did not have reasonable suspicion to
stop him or probable cause to search him; i.e., that probable
cause for arrest is negated through some variation of the

exclusionary rule or the "fruit of the poisonous tree" doctrine.
See Pl.'s Mem. at 15.

Defendants are correct that probable cause existed for
Plaintiff's arrest as a matter of law.[19]  Contrary to Plaintiff's
argument, as Defendants correctly note, neither the exclusionary
rule nor the fruit of the poisonous tree doctrine negates the
presence of probable cause or is applicable to Plaintiff's
claims.

The exclusionary rule "is a prudential doctrine
designed to enforce the Fourth Amendment by deterring law
enforcement from unreasonable searches and seizures" by
prohibiting the government from relying at trial on evidence
obtained in violation of the Amendment.  United States v. Franz,
772 F.3d 134, 145 (3d Cir. 2014) (citing Davis v. United States,
564 U.S. 229, 236 (2011)).  The fruit of the poisonous tree
doctrine, an extension of the exclusionary rule, "excludes
evidence obtained from or as a consequence of lawless official
acts."  Costello v. United States, 365 U.S. 265, 280 (1961).

---

[19]      Under Pennsylvania law, "[p]robable cause exists when
'the facts and circumstances which are within the knowledge of
the police officer at the time of the arrest, and of which he
has reasonably trustworthy information, are sufficient to
warrant a man of reasonable caution in the belief that the
suspect has committed or is committing a crime.'"  Renk, 641
A.2d at 293 (quoting Commonwealth v. Rodriguez, 585 A.2d 988,
990 (Pa. 1991)).  Plaintiff admits that Officer Simmons located
crack cocaine on his person, see Price Dep. 43:16-19, which is
sufficient to establish probable cause under that standard.

The exclusionary rule is not "a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 348 (1974).  As the Supreme Court has explained, "standing to invoke the exclusionary rule has been confined to situations where the Government seeks to use such evidence to incriminate the victim of the unlawful search." Id. "The evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." Hector v. Watt, 235 F.3d 154, 157 (3d Cir. 2000) (quoting Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999)). "Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy - including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." Id. (quoting Townes, 176 F.3d at 148).  The "fruit of the poisonous tree" doctrine likewise cannot be used by a plaintiff in a civil suit to avoid consideration of evidence obtained through police misconduct.  See Townes, 176 F.3d at 149 (holding that "[t]he fruit of the poisonous tree doctrine . . . is inapplicable to civil § 1983 actions").

As a result, the fact that Officer Simmons may not have had reasonable suspicion to stop Plaintiff or probable

cause to search him does not eliminate Officer Simmons' probable
cause to arrest Plaintiff after locating drugs on his person.
See, e.g., Zamichieli v. Andrews, No. 12-3200, 2016 U.S. Dist.
LEXIS 51364, at *11-12 (E.D. Pa. Apr. 15, 2016) (finding that
suppression of a gun found during an unreasonable search "does
not prevent [the] court from considering such evidence in
connection with its analysis of [Plaintiff's] § 1983 claims");
Lockhart v. City of Easton, No. 12-0133, 2013 WL 5225234, at *7
(E.D. Pa. Sept. 17, 2013) (finding that "the exclusionary rule
does not alter the probable cause analysis" on a false arrest
claim); Christian v. Orr, No. 08-2397, 2011 WL 710209, at *17
(E.D. Pa. Mar. 1, 2011) ("Whatever the legality of the searches
that yielded the marijuana . . . possession of this drug is
illegal in Pennsylvania and thus provides a basis for the police
to effect a legitimate arrest."); Konopka v. Borough of Wyo.,
383 F. Supp. 2d 666, 675 (M.D. Pa. 2005) (concluding that
"[w]hile the fruits of the allegedly illegal search may be
inadmissible in criminal proceedings under the exclusionary
rule, the illegality of said search does not vitiate the
existence of probable cause" in relation to Plaintiff's
malicious prosecution claim); Padilla v. Miller, 143 F. Supp. 2d
479, 491 (M.D. Pa. 2001) ("The lack of probable cause to stop
and search does not vitiate the probable cause to arrest,
because (among other reasons) the fruit of the poisonous tree

doctrine is not available to a § 1983 claimant." (emphasis omitted) (quoting Townes, 176 F.3d at 149)).

Therefore, the Court will grant summary judgment for Defendants on Plaintiff's false arrest and false imprisonment claims against Officers Simmons and Little.

### 2.   Count Seven: Abuse of Process

Count Seven of Plaintiff's Amended Complaint brings a Pennsylvania state law claim of abuse of process against Officers Simmons and Little, alleging that Officers Simmons and Little unlawfully arrested Plaintiff in retaliation for the previous lawsuit Plaintiff filed, thus using the legal process for that which it was not intended (i.e., retaliation).  Am. Compl. ¶ 31.  To prevail on an abuse of process claim under Pennsylvania law, a plaintiff must establish that "the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff."  Rosen v. Am. Bank of Rolla, 627 A.2d 190, 192 (Pa. Super. Ct. 1993).

The Third Circuit has explained that "[t]he gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it."  Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 304 (3d Cir. 2003) (alteration in original) (quoting McGee v. Feege,

535 A.2d 1020, 1023 (Pa. 1987)).  The requisite "perversion" of
the legal process "occurs when a party uses the process
'primarily to accomplish a purpose for which the process was not
designed.'"  Id. (emphasis added) (quoting Dumont Television
& Radio Corp. v. Franklin Elec. Co. of Phila., 154 A.2d 585, 587
(Pa. 1959)).  Accordingly, "there is no action for abuse of
process when the process is used for the purpose for which it is
intended, but there is an incidental motive or spite or ulterior
purpose of benefit to the defendant."  Id. at 305 n.2 (quoting
Rosen, 627 A.2d at 192).  Illegitimate purposes include, for
example, "extortion, forcing a defendant to surrender a legal
right, or blackmail."  Mawson v. Pittson Police Dep't, No. 13-
1714, 2014 WL 3735133, at *10 (M.D. Pa. July 28, 2014).

        Defendants argue that (1) Plaintiff's claim fails for
the same reasons as his retaliation claim, to the extent he
alleges that the arrest was retaliatory; and (2) Plaintiff has
failed to meet his burden because Officers Simmons and Little
merely carried out Plaintiff's arrest to its authorized
conclusion.  Defs.' Mem. at 22.  Plaintiff responds that his
detention without reasonable suspicion and arrest without
probable cause were both retaliatory and discriminatory, and
therefore constituted an abuse of process.  Pl.'s Mem. at 21.

        Here, as Defendants point out, there are no facts in
the record supporting Plaintiff's allegation that Officer

54

Simmons arrested Plaintiff in retaliation for Plaintiff's previous lawsuit, as opposed to arresting Plaintiff based on his discovery of crack cocaine in Plaintiff's pocket.  Nor has Plaintiff provided any other evidence of an improper motive for the arrest.  Further, and more importantly, even if Officer Simmons did have an improper motive for the arrest, Plaintiff has not made any allegation – let alone established any facts – suggesting that Officers Simmons or Little had any improper motive in conducting the suit against him, as opposed to an alleged improper motive in initiating it.  Plaintiff therefore does not have a claim for abuse of process under Pennsylvania law.  See, e.g., Rose v. Bartle, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (explaining that, unlike a claim for malicious prosecution, a "claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law'" (quoting Jennings v. Shuman, 567 F.2d 1213, 1217 (3d Cir. 1977))); Giordano v. Murano-Nix, No. 12-7034, 2014 U.S. Dist. LEXIS 1861, at *41 (E.D. Pa. Jan. 8, 2014) ("[M]erely continuing to pursue a claim that was initiated with malice does not transform a malicious prosecution claim into an action for abuse of process.").

Accordingly, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's abuse of process claim.

### 3.   Count Eight: Malicious Prosecution

Count Eight of Plaintiff's Amended Complaint brings a state law malicious process claim against Officers Simmons and Little, based on the officers having "initat[ed] charges against the Plaintiff without probable cause for which the Plaintiff was unlawfully detained and restrained for approximately four months." Am. Compl. ¶ 33.  Plaintiff also alleges that the charges were later terminated in his favor.  Id.

To establish a claim for common law malicious prosecution under Pennsylvania law, a plaintiff must show that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." Merkle, 211 F.3d at 791 (citing Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996)). Defendants argue that Plaintiff's malicious prosecution claim fails as a matter of law because (1) neither Simmons nor Little instituted criminal proceedings against Plaintiff; (2) the charges against Plaintiff were supported by probable cause;

56

(3) there is no evidence of malice; and (4) Plaintiff was admittedly guilty of the crime with which he was charged.  See Defs.' Mem. at 17.

Lack of probable cause is one of the elements of Plaintiff's claim.  See Merkle, 211 F.3d at 791.  As the Court has  previously concluded that probable cause existed for Plaintiff's arrest, Plaintiff's malicious prosecution claim fails as a matter of law, and the Court need not reach the remainder of Defendants' arguments.

C.   Punitive Damages

Defendants argue that Plaintiff's claim for punitive damages fails as a matter of law because Plaintiff has failed to establish that any actions taken by Officer Simmons or Officer Little were motivated by an evil motive or reckless indifference to Plaintiff's rights.  Defs.' Mem. at 30.  Plaintiff responds that Officer Simmons' decision to grab Plaintiff and slam him against a car without cause demonstrates his reckless disregard for Plaintiff's rights, and that Officer Simmons' actions were retaliation against Plaintiff for filing an earlier lawsuit, demonstrating an improper motive.  Pl.'s Mem. at 16-17.

Individual state actors sued in their individual capacities under 42 U.S.C. § 1983 may be liable for punitive damages.  See City of Newport v. Fact Concerts, Inc., 453 U.S.

247, 266-67 (1981); Rankin v. City of Phila., 963 F. Supp. 463, 477 (E.D. Pa. 1997).  However, punitive damages are available on a § 1983 claim only if the conduct giving rise to the claim was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).

As discussed above, all of Plaintiff's claims against Officer Simmons and Officer Little fail as a matter of law, with the exception of Plaintiff's claims against Officer Simmons in Counts Two and Three of the Amended Complaint: excessive force and unreasonable search and seizure in violation of the Fourth Amendment.  The Court will therefore limit its analysis to those claims.

There is no evidence in the record that Officer Simmons' actions in stopping and searching Plaintiff were retaliation against Plaintiff for filing his previous lawsuit, which is the only allegation Plaintiff makes with respect to Officer Simmons' purported "evil motive."  However, if a jury concludes that Officer Simmons did violate Plaintiff's Fourth Amendment rights to be free from excessive force and unreasonable searches and seizures, the jury could also conclude that Officer Simmons' actions represent "reckless or callous indifference" to Plaintiff's rights.

Therefore, the Court will allow Plaintiff's claims for punitive damages with respect to Counts Two and Three to move forward.

## VI.   CONCLUSION

For the reasons discussed above, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's claims against Officer Simmons and Officer Little in Counts One, Four, Five, Six, Seven, Eight, Nine, and Twelve of the Amended Complaint, in addition to Plaintiff's claims against Officer Little in Counts Two and Three of the Amended Complaint. The Court will deny Defendants' motion for summary judgment with respect to Plaintiff's excessive force and unreasonable search and seizure claims against Officer Simmons in Counts Two and Three of the Amended Complaint, including Plaintiff's request for putative damages with respect to those two claims.   The Court will also deny Plaintiff's motion to strike.

An appropriate order follows.